**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MICHAEL JAY MCDONALD,

        Plaintiff,

        v.                                   Civil Action No. 1:10-cv-95

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


**REPORT AND RECOMMENDATION CLAIMANT'S MOTION FOR SUMMARY**
**JUDGMENT BE DENIED**

### I. Introduction

A.    Background

      Plaintiff, Michael Jay McDonald (hereinafter "Claimant"), filed his Complaint on June 18, 2010, seeking Judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed his Answer on December 17, 2010.[2] Claimant filed his Motion for Summary Judgment on January 18, 2011.[3] Commissioner filed his Motion for Summary Judgment on February 17, 2011.[4]

B.    The Pleadings

      1.    Plaintiff's Motion for Summary Judgment and Arguments in Support Thereof.

---

[1] Docket No. 4.

[2] Docket No. 9.

[3] Docket No. 12.

[4] Docket No. 13.

2.    <u>Defendant's Brief in Support of His Motion for Summary Judgment</u>.

C.    <u>Recommendation</u>

For the following reasons, I recommend that:

1.    Claimant's Motion for Summary Judgment be **<u>DENIED</u>** because the ALJ properly evaluated the treating physician's reports, correctly evaluated Claimant's obesity in determining Claimant's RFC, and correctly assessed Claimant's credibility.

2.    Commissioner's Motion for Summary Judgment be **<u>GRANTED</u>** for the same reasons.

## II. Facts

A.    <u>Procedural History</u>

Claimant filed an application for Disability Insurance Benefits ("DIB") on April 13, 2006, alleging disability due to back pain caused by degenerative disc disease, numbness in his legs and hands, tingling in his hands, intestinal issues, and uncontrolled hypertension. (Tr. 16, 113-17, 131).  The application was initially denied on June 30, 2006, and on reconsideration on January 29, 2007. (Tr. 78-79).  Claimant requested a hearing before an Administrative Law Judge (hereinafter "ALJ") and received a hearing on April 3, 2008 in Morgantown, West Virginia. (Tr. 26-77).

On June 13, 2008, the ALJ issued a decision adverse to Claimant finding that Claimant could perform his past relevant work and, therefore, was not under a disability, as defined in the Social Security Act in 20 C.F.R. § 404.1520(g). (Tr. 25).  Claimant requested review by the Appeals Council but such review was denied. (Tr. 1-5).  Claimant filed this action, which proceeded as set forth above, having exhausted his administrative remedies.

2

B.    Personal History

Claimant was born on May 15, 1965, and was forty (40) years old on the onset date of the alleged disability and forty-two (42) years old as of the date of the ALJ's decision. (Tr. 34, 113). Under the regulations, Claimant was considered a "younger person" aged 45-49, and generally, one whose age will not "seriously affect [Claimant's] ability to adjust to other work." 20 C.F.R. §§ 404.1563(c), 416.963(c) (2010).  Claimant earned his General Educational Development certificate and has prior work experience as a delivery truck driver, gate keeper/security guard and a janitor. (Tr. 24, 33).

C.    Medical History

The following medical history is relevant to the issues of whether substantial evidence supports the ALJ's finding that the Claimant could perform a range of sedentary work as well as the ALJ's credibility determination relative to the Claimant.

In the disability report from the field office, Representative L. Casey noted that Claimant did not have any difficulty with the following: hearing, reading, breathing, understanding, coherency, concentrarting, talking, answering, sitting, standing, walking, seeing, using hands, and writing.  Mr. Casey noted that "Claimant was accompanied at [sic] interview by his girlfriend, who helped to answer questions. He was a very large man and had some trouble going from a sitting to standing position. [Sic] walked somewhat stiffly but used no assistive devices." (Tr. 143).

In a vocational analysis dated June 30, 2006 completed by the Clarksburg Area Office, the analysis remarked that "Claimant cannot perform PRW. Cannot work as janitor due to

climbing. Cannot work combo job as phone op and odd jobs since odd jobs were at least medium exertional level. Cannot work driving due to restrictions. *He can perform other work*." (Tr. 172) (emphasis added). The analysis indicated that Claimant could perform jobs as an "Adjuster," a "baker helper" and a "casket cover." It also set Claimant's exertional level at medium and restricted Claimant with only postural limitations. (Tr. 172).

Claimant's outpatient records from the Physician Office Center do indicate Claimant suffers from back pain and injury. While the records note that Claimant should not be subject to any prolonged sitting nor any forceful pushing/pulling, the reports to Claimant's employer was that Claimant was "able to work with limitations." (Tr. 207-14, 216, 219, 224). An MRI of Claimant's back indicated there was prominent central spinal canal stenosis at the L4-L5, L3-L4, and L2-L3 levels. The impression was listed as "multi-level disc disease with prominent central spinal stenosis extending from L2 through L5 levels." (Tr. 217). In Claimant's outpatient progress notes, Dr. Edward Doyle, Jr. wrote that Claimant had "modified duty restrictions" at work and that a "very detailed report to the employer was sent with [Claimant] clearly outlining his work restrictions." (Tr. 221). Dr. Jack E. Riggs noted Claimant's prominent lumbar stenosis but indicated Claimant's strength and muscle bulk were normal. (Tr. 225).

The medical records regarding Claimant's treatment from Dr. Minor at Minor Family Practice also indicate Claimant suffered from pain in the back and right lower extremity and spinal stenosis. (Tr. 241). Records also indicate Claimant had positive straight-leg raising on the right and that Claimant's gait is slow, but appeared to be normal. (Tr. 243). In an examination dated September 20, 2004, the physician indicates that Claimant "is an obese, young man in no acute distress." (Tr. 244). Also stated upon examination of Claimant's back was that "there is no

significant tenderness to palpitation." (Tr. 244). Claimant's motor strength was rated as 5 out of 5 in all extremities. (Tr. 244). In Claimant's plan and assessment, it was noted twice that Claimant would have "continued work with modified duties." (Tr. 245). Additionally, Dr. Minor noted on May 31, 2005 that while Claimant had low back pain, Claimant was able to return to work. (Tr. 394).

In Claimant's "Employee's and Physician's Report of Injury" from the Worker's Compensation Division, Claimant's back injuries were also present. The examining physician indicated that Claimant's injury occurred when Claimant was delivering an electric range.(Tr. 275). In describing the injury, the physician noted that Claimant suffered from a thoracic sprain, lumbar strain and neurospasm.(Tr. 275).

While not dispositive of the issue of disability, the Court includes Claimant's assessment of functional limitations completed by a private insurance company because the ALJ was required to consider, and did consider, this information. The assessment of Claimant's physical capacity restricted Claimant as follows: 1) can occasionally sit, stand, walk, bend, climb, push, and pull; 2) can frequently drive and grasp; 3) is unable to squat and kneel; and 4) has no restrictions in reaching.(Tr. 302). Claimant as assessed at unable to lift upwards of 20 pounds but could occasionally lift 10-20 pounds and could frequently lift less than 10 pounds.(Tr. 302).

In outpatient records from the Physician Office Center covering the period of February 13, 2003 to January 26, 2006, the physician notes that Claimant "should be a little more assertive in recovering. He declines seeking a vocational rehabilitation at this point." (Tr. 310). Additionally, Claimant was also "recommended to work with Workers' Compensation for vocational rehabilitation" and that "his prospect for getting employment that fits him is great

considering the fact that he has a commercial driver's license." (Tr. 312). Claimant was cleared as able to work with limitations of avoiding heavy lifting and bending. (Tr. 314). Patient was noted as "still functioning highly at work, using medical management." Claimant was again provided with a modified duty slip for Claimant's employer and was recommended to avoid any strenuous bending or lifting. (Tr. 316). Claimant was noted as "able to continue working as a janitor." (Tr. 316).

In Claimant's outpatient records from the UHA Department of Occupational Medicine, the physician recorded Claimant stating "he liked to work, but he is apprehensive about the ability for Vocational Rehabilitation to find him a new job." (Tr. 401). Claimant also reported that

In the physical RFC assessment completed by Dr. Fulvio Franyutti, Dr. Franyutti diagnosed Claimant with "DDD of L.spin LBP syndrome" and gave a secondary diagnosis of "Lt. Nephrolithiasis, gout. CTS."(Tr. 365). Claimant's exertional limitations were as follows: can occasionally lift and/or carry 50 pounds, can frequently lift and/or carry 25 pounds, can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday and was unlimited in pushing and/or pulling (including operation of hand and/or foot controls). (Tr. 366). Claimant's postural limitations were as follows: can frequently engage in stooping, kneeling, and crouching; can occasionally engage in climbing ramp/stairs, balancing, and crawling; and can never engage in climbing ladder/ropes/scaffolds. (Tr. 367). No manipulative, visual or communicative limitations were established. (Tr. 368-69). Claimant's environmental limitations were as follows: unlimited exposure to wetness, humidity, noise and fumes, odors, dusts and gases; avoid

concentrated exposure to extreme cold or heat, vibrations, and hazards. (Tr. 369). Dr. Franyutti found Claimant to be only "partially credible" and advised that Claimant "continue usual restrictions of avoiding lifting and bending." (Tr. 370-71).

In the physical RFC assessment completed by Dr. Porfirio Pascasio, the physician assessed Claimant's primary diagnosis as "DDD-LX/Morbid-Obesity/Gout/CTS" and a secondary diagnosis of "GERD/Nephrolithiasis L." (Tr. 414). Claimant's exertional limitations were as follows: can occasionally lift and/or carry (including upward pulling) 50 pounds, can frequently lift and/or carry (including upward pulling) 25 pounds, can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and is unlimited in pushing and/or pulling (including operation of hand and/or foot controls). (Tr. 415). Claimant's postural limitations were assessed as follows: 1) can frequently stoop, kneel, and crouch; 2) can occasionally climb ramp/stairs, balance and crawl; and 3) can never engage in climbing ladders, ropes or scaffolds. (Tr. 416). No manipulative, visual or communicative limitations were established. (Tr. 417-18). Claimant's environmental limitations were assessed as follows: 1) unlimited exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation; 2) avoid concentrated exposure to extreme cold and heat. (Tr. 418). Dr. Pascasio "agreed with [the] previous evaluation that Claimant is partially credible." (Tr. 419).

D     Testimonial Evidence

Testimony was taken at the hearing held on June 9, 2009. The following facts were established at the hearing:

- •     Claimant was 42 years old at the time of the hearing (Tr. 34)
- •     Claimant is between 5' 10" and 5' 11" tall and weighs about 300 pounds (Tr. 34)

- Claimant is not married but has a significant other (Tr. 34)
- Claimant holds a CDL but tries not to drive anymore (Tr. 35)
- Claimant finished the 11th grade of high school and achieved his GED (Tr. 37)
- Claimant is able to read but states he is "not really" able to write (Tr. 37)
- Claimant attended special education classes in junior high and high school (Tr. 38)
- Claimant attended a vocational technical program focusing on building construction and buildings grounds maintenance (Tr. 38)
- Claimant is able to count money, make change and do simple math (Tr. 38)
- Claimant was receiving disability payments from his employer's insurance carrier (Tr. 39)
- Claimant back injury in 1999 resulted from Claimant unloading drywall (Tr. 41)
- Claimant received some disability benefits in 1999 due to the above-mentioned injury but continued to work (Tr. 42)
- Claimant re-injured his lower back in 2005 (Tr. 45)
- His employer placed Claimant in a janitor position (Tr. 45)
- Claimant worked as a gate security guard (Tr. 45)
- Claimant had work history as a truck driver, a boom operator, and a home warehouse worker (Tr. 48)
- As a truck driver, Claimant would deliver goods to a customer's home and unload it and carry it into the home (Tr. 48-49)
- Claimant's heaviest part of a delivery truck driver was carrying shingles that weighed between 50 to 100 pounds (Tr. 49)
- Claimant worked at Lowe's for about 20 years and has not been employed since 2005 (Tr. 50)
- Claimant complains of back problems that originate from Claimant's shoulders down to his foot (Tr. 51)
- Claimant has not had physical therapy in the last three years since the date of the hearing (Tr. 54)
- Claimant wanted surgery to lessen his back pain but physicians told Claimant he was at too high of a risk for the surgery (Tr. 54)
- Claimant testified he was unable to pursue pain management via injections because workers compensation officials would not permit it (Tr. 55)
- Claimant rates his pain at eight out of ten (10 being the worst) (Tr. 56)
- Claimant testified medication merely numbs his pain but he cannot get any sleep (Tr. 56)
- Claimant uses a "stick" as an assistive device, but it was not prescribed (Tr. 57)
- Claimant sees Dr. Minor at first 1/x month and later at fewer frequencies (Tr. 58)
- Claimant is able to wlk on level ground about a block before stopping (Tr. 59)
- Claimant is able to stand for short periods of time due to "Charley" horses (Tr. 59)
- Claimant has feelings in his hands and is able to lift about 5 pounds (Tr. 59-60)
- Does not have problems breathing and does not smoke (Tr. 61)
- Sleeps about 2 hours but tosses and turns throughout the night (Tr. 61)

- Can shower and complete personal grooming without help (Tr. 61)
- Claimant does not do any housework and rarely cooks (Tr. 62)
- Claimant's typical day begins at 7:00am or 8:00am and he "putters" around (Tr. 62)
- Claimant is able to see/check up on his parents but does not care for them (Tr. 62-63)
- Has not been hunting in three years or more (Tr. 63)
- Ceased membership in clubs and outside organizations due to pain (Tr. 64)
- Claimant's home is all one level with few steps (Tr. 65)
- Claimant's previous work as a truck driver and unloader is assessed at "heavy range," claimant's position as a janitor is assessed at "light to medium range," and Claimant's work as a gate security guard is assessed at "Light and semi-skilled." (Tr. 67)

E.      Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life:

- is able to visit his parents at their home and feeds their dog (Tr. 144)
- likes to work with wood (Tr. 157)
- does not need any special reminders to take care of personal needs/grooming (Tr. 167)
- can and does prepare breakfast foods everyday (Tr. 167)
- frequently goes outdoors (Tr. 168)
- can walk, drive and ride in a car (Tr. 168)
- is able to pay bills, count change, handle a savings account and use a checkbook/money order (Tr. 168)
- Is able to go to movies, eat out and play board games with others (Tr. 169)
- Does not have problems getting along with family, friends and neighbors (Tr. 170)
- Walks until it is too much (Tr. 170)
- Follows written instructions fairly well and spoken instructions pretty good (Tr. 170)
- Is able to get along with authority figures very well (Tr. 171)
- Has not been laid off/fired from a job due to problems getting along with other people (Tr. 171)
- Occasionally gets "Charley Horses" in his legs resulting in less sleep at night (Tr. 174)
- Standing results in pain to Claimant (Tr. 177)
- Complains of back pain even after medicinal dosage (Tr. 177)

- Has poor sleeping habits due to restless leg and pain (Tr. 185)
- Can only tolerate standing for about 10-20 minutes (Tr. 188)
- Avoids climbing stairs (Tr. 188)
- Cannot sit for longer than 5-10 minutes before needing to adjust positions (Tr. 188)
- Cannot lift any weight from ground level (Tr. 188)
- Can only lift weight when standing upright (Tr. 188)
- Injuries have affected Claimant's lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, using his hands, and reaching (Tr. 170)
- reports diminished concentration, stuttering due to medications and nerve damage (Tr. 185)
- Has a commercial driver's license (Tr. 35)
- Is not married but has a significant other (Tr. 34-35)
- Weight increased by 150 pounds since Claimant was injured (Tr. 34)
- Has a GED and completed 11th grade in high school (Tr. 37)
- numerous references in the record to Claimant's obesity

### III.  The Motions for Summary Judgment

A.      Contentions of the Parties

Claimant contends the ALJ's decision is in error and not supported by substantial evidence for several reasons.  Claimant argues first that the "ALJ failed to comply with 20 C.F.R. § 404.1527  by basing his decision on statements within the medical records that are not consistent with the record as a whole." See Pl.'s Summ. J. Mot., Pg. 2 (Dkt. 12).  Claimant additionally argues the ALJ provided insufficient explanations as to why the ALJ disregarded Claimant's treating physician's findings.  Claimant contends the ALJ failed to consider the effects of Claimant's obesity and also made an improper credibility determination.

Commissioner argues that substantial evidence supports the ALJ's decision to deny Claimant benefits because the ALJ "properly evaluated the opinion evidence from [Claimant's treating physicians] in accordance with controlling regulations." See Def.'s Summ. J. Mot., Pg. 10 (Dkt. 14).  Commissioner also argues the ALJ "properly evaluated Plaintiff's obesity singly

and in combination with [Claimant's] other impairments." <u>Id.</u> at 12.  Commissioner lastly

contends the ALJ's credibility determination of Claimant was correct in finding that the ALJ

"could not credit [Claimant's] statements concerning the limiting effects of [Claimant's]

symptoms." <u>Id.</u> at 7.

B.    Discussion

### 1. Whether the ALJ Properly Evaluated the Treating Physicians' Opinions In Compliance With the Controlling Regulations

Claimant argues the ALJ's determination is in error because the "[ALJ's] finding that

[Claimant] can perform the sitting/standing/reaching, etc. of light work is not supported

substantially by the opinions of examining physicians." <u>See</u> Pl.'s Summ. J. Mot., Pg. 4-5 (Dkt.

12).  Claimant contends the ALJ improperly dismissed Dr. Minor's, one of Claimant's treating

physicians, testimony "because Dr. Minor is a D.O. rather than an M.D. and because [Dr.

Minor's] specialty is family practice rather than neurosurgery." <u>Id.</u> at 5.  Claimant argues

reversal is warranted because "the records of both [Dr. Minor and Dr. Martin] are consistent as

they have both diagnosed [Claimant] with lumbar pain and radiculopathy." <u>Id.</u> at 6.

Commissioner argues the ALJ properly evaluated the opinions of Dr. Minor and Dr.

Martin.  Specifically, Commissioner contends "[t]he ALJ is required to conduct an independent

analysis of the relevant evidence, and develop an appropriate RFC based upon that evidence."

<u>See</u> Def.'s Summ. J. Mot., Pg. 10-11 (Dkt. 14).  The ALJ, Commissioner argues, "provided

legitimate reasons why [the ALJ] could not credit Dr. Minor's restrictive opinions" because "the

objective examination findings demonstrated [Claimant] had mild back tenderness and spasms,

but were otherwise unremarkable." <u>Id.</u> at 11.  Commissioner also asserts the ALJ was permitted

to consider that Dr. Minor is a family practitioner who lacks the expertise of a neurosurgeon

under 20 C.F.R. § 404.1527(d)(5).  The Commissioner contends reversal is unwarranted because the ALJ "recognized that Drs. Minor and Martin diagnosed lumbar radiculopathy and back pain pain" but provided sufficient explanations as to why the ALJ could not fully credit these opinions.

All medical opinions are to be considered in determining the disability status of a claimant.  20 C.F.R. §§ 404.1527(b), 416.927(b).  Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist.  20 C.F.R. § 404.1527(d)(2) (2010).  Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight."  Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). The opinion and credibility of claimant's treating physician is entitled to great weight but may be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 f.2d 1012, 1015 (4th Cir. 1984).

Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the

case record.  20 C.F.R. §416.927(d)(2).  See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).  To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. at 461; 20 C.F.R. §§ 404.1508; Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Affording controlling weight to Claimant's treating physicians' opinions is inappropriate in this case because the ALJ provided reasonable explanations as to why the ALJ did not fully credit the opinions.  Claimant argues the ALJ's "finding that [Claimant can perform the sitting/standing/reaching, etc. of light work is not supported substantially be the opinions of examining physicians...." See Pl.'s Summ. J. Mot., Pg. 4 (Dkt. 12).  While it is true that treating physician's opinion should be given great weight, this is only when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." See Craig, 76 F.3d at 590. The ALJ's determination assessed Dr. Minor's opinion and explained why it was afforded little weight.  The ALJ stated "[C]laimant's back problems and other physical impairments are not so severe as to justify the restrictive exertional and postural limitations in Dr. Minor's opinion. In addition, Dr. Minor is a doctor of osteopathy who specializes in family practice.  Therefore, his opinion regarding the effects of [C]laimant's back problems does not carry the same weight as an opinion from a medical doctor who specializes in neurosurgery."  As Commissioner notes, the ALJ is

well within his bounds of authority to consider a doctor's specialization, or lack thereof, under the regulations. See 20 C.R.F. § 404.1527(d)(5). The Court finds this argument to be without merit. Moreover, the ALJ also recited Claimant's medical history which provided evidence in opposition to Claimant's allegations of disabling functional limitations. By way of example, the ALJ stated Claimant's "restriction against repetitive bending and stooping is inconsistent with several physical examinations performed in 2006, which revealed a normal gait; negative straight leg raise test bilaterally; normal strength in both lower extremities; and only mild tenderness in the paraspinal muscles with some muscle spasms." (Tr. 22). Accordingly, the Court finds that the ALJ was acting reasonably in evaluating and affording less than controlling weight to Claimant's treating physicians' opinions.

### 2. Whether the ALJ's Consideration of the Effects of Claimant's Obesity Was Proper

Claimant argues that the "ALJ erred in ignoring the exacerbating effect of the [C]laimant's obesity on his musculoskeletal impairments." See Pl.'s Summ. J. Mot., Pg. 6 (Dkt. 12). Specifically, Claimant argues that the ALJ's consideration of Claimant's obesity "consisted of two comments that [Claimant] had been advised to lose weight on numerous occasions, but had not done so." Id.

Commissioner contends the ALJ "properly evaluated [Claimant's] obesity singly and in combination with [Claimant's] other impairments." See Def.'s Summ. J. Mot., Pg. 12 (Dkt. 14). Commissioner cites to step two of the ALJ's evaluation where "the ALJ found that [Claimant's] morbid obesity...[was] a severe impairment[]." Id. Commissioner highlights that the ALJ twice discussed Plaintiff's obesity in explaining the ALJ's RFC finding, that the ALJ verified Claimant's obesity at the hearing and also considered "the medical evidence from [Claimant's]

treating physicians and the state agency physicians, all of whom consistently discussed [Claimant's] obesity and failed to report that it caused functional limitations of disabling severity, singly or in combination with [Claimant's] other impairments." Id.

Social Security Ruling 02-01p explains the Administration's policy and protocol on the evaluation of obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SOCIAL SECURITY RULING 02-1p, 2002 SSR LEXIS 1. The Ruling recognizes Body Mass Index (BMI) as one of the indicia of an individual's degree of obesity. Id. SOCIAL SECURITY RULING 02-1p provides that at step two of the five step evaluation, obesity may be considered severe alone or in combination with another medically determinable impairment. It further provides that the Administration will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SOCIAL SECURITY RULING 02-1p[6], 2002 SSR LEXIS 1, *12. An adjudicator must consider the impact of a claimant's obesity on his residual functional capacity. Hess v. Astrue, 2:09-cv-124, 2010 U.S. Dist. LEXIS 29986, *5-6 (S.D. Ohio, March 29, 2010); SSR 02-1p, 2002 SSR LEXIS 1.

Claimant's argument that the ALJ failed to properly consider Claimant's obesity in the ALJ's determination must fail. The ALJ's decision demonstrates that the ALJ evaluated and considered Claimant's obesity in determining Claimant's residual functional capacity. The ALJ recognized Claimant's obesity was severe and accounted for such in the RFC determination by adjusting the exertional level Claimant was capable of performing to "light work" notwithstanding state agency consultant opinions that Claimant was capable of performing work at a medium exertional level. (Tr. 20, 23). The ALJ, in his opinion, explains that the ALJ

considered "Claimant's obesity in evaluating the [C]laimant's impairment" and the Court finds Claimant's assertion that the ALJ provided a mere cursory review of Claimant's obesity to be without merit.  As Commissioner notes, the ALJ reviewed Claimant's obesity at the hearing and throughout the ALJ's decision.  The Court finds it noteworthy Claimant's treating physicians as well as the state agency physicians noted Claimant's height and weight but did not document any work preclusive limitations that were attributable to Claimant's obesity. (Tr. 242, 315, 318, 322, 325, 330, 348, 399, 400).  Accordingly, the Court finds Claimant's argument in this regard deficient.

### 3. Whether Substantial Evidence Supports a Finding that Claimant's Subjective Symptoms Were Not Entirely Credible

Claimant contends the "ALJ improperly discounted the [C]laimant's credibility on the basis of the [C]laimant's failure to follow prescribed treatments." <u>See</u> Pl.'s Summ. J. Mot., Pg. 7 (Dkt. 12).  Specifically, Claimant argues "[the ALJ] implies in his decision that [Claimant] refused to follow prescribed treatment by failing to undergo physical therapy, obtain a TENS unit, or have a series of epidural injections." <u>Id.</u>  Claimant asserts Claimant's failure to follow prescribed treatment was not willful, "was likely a result of miscommunication between [Claimant], [Claimant's] physicians and workers' compensation" and "should not be used as evidence to impugn [Claimant's] credibility." <u>Id.</u> at 7-8.

Commissioner argues the ALJ applied the correct legal standards in determining not to fully credit Claimant's statements regarding the limiting effects of Claimant's symptoms.  Specifically, Commissioner contends the "ALJ identified, and then evaluated [Claimant's] statements" and that "substantial evidence in the record supports the ALJ's assessment that [Claimant's] testimony was 'slightly exaggerated and only partially credible.'" <u>See</u> Def.'s

Summ. J. Mot., Pg. 7 (Dkt. 14). Commissioner highlights that the "ALJ's consideration of [Claimant's] failure to engage in recommended physical therapy was proper because it is well established that inconsistencies between a claimant's allegations about the severity of an impairment and treatment sought is probative of credibility." Id. at 8-9. Commissioner asserts that there is no support for Claimant's "claim that the ALJ ignored his complaints of pain and symptoms related to his lumbar radiculopathy" because the ALJ "recognized that [Claimant] had severe impairments...and accounted for [Claimant's] established functional limitations in his RFC finding." Id. at 9. Therefore, Commissioner argues the ALJ's credibility determination was proper.

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3) (2010). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 664-65 (1988); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges

disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. Id. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." Id. at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. Id. at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective medical impairment could not reasonably be expected to cause the symptoms alleged. Id.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c).

Accompanying factors are provided in SSR 96-7p that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily

18

activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination must fail. Claimant essentially argues the ALJ's credibility assessment was based solely on three factors: 1) the negative results of Claimant's straight leg raising tests; 2) Claimant's combativeness in Claimant's gastroscopy procedure; and 3) Claimant's failure to follow prescribed treatment of losing weight. See Pl.'s Summ. J. Mot., Pg. 7-8 (Dkt. 12). The Court finds these arguments unpersuasive because the ALJ's determination is replete with numerous factors the ALJ utilized in assessing Claimant's credibility as "slightly exaggerated and only partially credible." (Tr. 22). By way of example, the ALJ stated "[i]n June 2005, the [C]laimant complained of lower back pain, but refused to attend physical therapy sessions." (Tr. 22). The ALJ also noted "[Claimant] alleged disability due to restless leg syndrome, but has never sought treatment for this condition." (Id.) Additionally, the ALJ reviewed Claimant's medical records which reported the

Claimant as stating Claimant received some pain relief from his medications. (Tr. 400). Perhaps most importantly, the ALJ highlighted that Claimant had aggravated his back further while delivering an appliance. (Tr. 21). The ALJ stated he found Claimant's credibility as a witness to be fair after observing Claimant at the hearing but found Claimant to be only partially credible due to the above-stated factors. The Court finds that the ALJ had more than a mere scintilla of evidence to assess Claimant's credibility as "slightly exaggerated and only partially credible" and Claimant has not met his burden to show the ALJ's credibility determination was "patently wrong." See Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, the ALJ appropriately discredited Claimant's subjective statements regarding Claimant's pain and symptoms in keeping with controlling regulations.

## IV. Recommendation

For the foregoing reasons, I recommend that:

1.      Claimant's Motion for Summary Judgment be **<u>DENIED</u>** because the ALJ properly evaluated the treating physician's reports, correctly evaluated Claimant's obesity in determining Claimant's RFC, and correctly assessed Claimant's credibility.

2.      Commissioner's Motion for Summary Judgment be **<u>GRANTED</u>** for the same reasons.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be

submitted to the District Court Judge of Record. Failure to timely file objections to the Report

and Recommendation set forth above will result in waiver of the right to appeal from a judgment

of this Court based upon such Report and Recommendation.

DATED: March 7, 2011                            /s/ *James E. Seibert*
                                               JAMES E. SEIBERT
                                               UNITED STATES MAGISTRATE JUDGE